UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANDREW COOKE, ON BEHALF OF THE ANDREW R. COOKE 1998 TRUST, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Master Docket No. 5:14-cv-00087-C (Consolidated with Nos. 5:14-cv-00047-C; 5:14-cv-00058-C; and 5:14-cv-00114-C) |
| Plaintiffs, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| EQUAL ENERGY LTD., et al., | ) ) | |
| Defendants. | ) ) ) | |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

**Page**

I.  FACTUAL BACKGROUND .................................................................................. 1

II.  TERMS OF THE SETTLEMENT ......................................................................... 3

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
APPROVAL ....................................................................................................... 4

IV.  CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT IS
PROPER ........................................................................................................... 10

    A.  Rule 23(a)(1): Numerosity .......................................................................... 11

    B.  Rule 23(a)(2): Commonality ....................................................................... 12

    C.  Rule 23(a)(3): Typicality ............................................................................. 13

    D.  Rule 23(a)(4): Adequacy of Representation................................................. 14

    E.  Certification Is Maintainable Under Federal Rule of Civil Procedure
23(b)(2)........................................................................................................ 15

    F.  Lead Counsel Should Be Appointed Class Counsel ................................... 16

V.  PROPOSED SCHEDULE OF EVENTS ............................................................. 16

VI.  CONCLUSION .................................................................................................. 17

980952_2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) .................................................................................................... 11

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
167 F. Supp. 2d 1216 (D. Colo. 2001) .................................................................... 4, 5

*DG v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) ................................................................................ 13

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010).......................................................................................... 5

*Fletcher v. A. J. Indus., Inc.*,
266 Cal. App. 2d 313 (1968) ......................................................................................... 8

*Hershey v. ExxonMobil Oil Corp.*,
No. 07-1300-JTM, 2012 U.S. Dist. LEXIS 153803
(D. Kan. Oct. 26, 2012)................................................................................................. 4

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ...................................................................................... 14

*In re Crocs, Inc. Sec. Litig.*,
No. 07-cv-02351-PAB-KLM, 2013 U.S. Dist. LEXIS 122593
(D. Colo. Aug. 28, 2013) ................................................................... 5, 11, 12, 13

*In re Enron Corp. Sec.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008),
*aff'd*, 762 F.3d 1248 (11th Cir. 2014)...................................................................... 15

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
No. MDL 901, 1992 U.S. Dist. LEXIS 14337
(C.D. Cal. June 10, 1992).............................................................................................. 7

*In re Initial Pub. Offering Sec. Litig.*,
227 F.R.D. 65 (S.D.N.Y. 2004) ................................................................................ 12

*In re Medical X-Ray Film Antitrust Litig.*,
No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936
(E.D.N.Y. Dec. 10, 1997) .............................................................................................. 5

Page

*In re Motor Fuel Temperature Sales Practices Litig.*,
  286 F.R.D. 488 (D. Kan. 2012)...................................................................................5

*In re Thornburg Mortg., Inc.*,
  912 F. Supp. 2d 1178 (D.N.M. 2012) .............................................................11, 12, 13

*Lane v. Page*,
  862 F. Supp. 2d 1182 (D.N.M. 2012) .......................................................................6

*Local 703, I.B. v. Regions Fin. Corp.*,
  282 F.R.D. 607 (N.D. Ala. 2012).............................................................................14

*Lopez v. City of Santa Fe*,
  206 F.R.D. 285 (D.N.M. 2002) ................................................................................12

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2002) ...............................................................................6

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997).....................................................................................13

*McEwen v. Digitran Sys.*,
  160 F.R.D. 631 (D. Utah 1994) ...............................................................................11

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)..................................................................................................8

*Neiberger v. Hawkins*,
  208 F.R.D. 301 (D. Colo. 2002) ..............................................................................11

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ...........................................................................7, 9, 10

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ...............................................................................14

*Stroud v. Grace*,
  606 A.2d 75 (Del. 1992) ............................................................................................8

*Turner v. Bernstein*,
  768 A.2d 24 (Del. Ch. 2000)....................................................................................15

- iii -

**Page**

*Weinberger v. Rio Grande Indus., Inc.*,
519 A.2d 116 (Del. Ch. 1986) ................................................................. 8

*Wilkerson v. Martin Marietta Corp.*,
171 F.R.D. 273 (D. Colo. 1997) ............................................................. 4

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 23 ....................................................................................................... 14
Rule 23(a) ................................................................................................... 10
Rule 23(a)(1) .............................................................................................. 11
Rule 23(a)(2) .............................................................................................. 12
Rule 23(a)(3) ........................................................................................ 13, 14
Rule 23(a)(4) .............................................................................................. 14
Rule 23(b) ................................................................................................... 11
Rule 23(b)(2) .............................................................................................. 15
Rule 23(g)(1) .............................................................................................. 16

## SECONDARY AUTHORITIES

*Manual for Complex Litigation* (4th ed. 2004)
§13.14 .......................................................................................................... 5
§30.41 .......................................................................................................... 6

980952_2

## MOTION

Plaintiffs Andrew Cooke, on behalf of the Andrew R. Cooke 1998 Trust, Kenneth and Aldona Olsen, John Solak, Abraham Grinberger, Johan Van Weelden, Anthony Montemarano, and Jonathan Scripture ("Plaintiffs") hereby move the Court for entry of the Preliminary Approval and Scheduling Order ("Scheduling Order"), submitted herewith.  The Scheduling Order will: (a) preliminarily approve the settlement set forth in the Stipulation and Agreement of Compromise, Settlement, and Release dated November 14, 2014 ("Stipulation" or "Settlement"),[1] which is submitted herewith; (b) certify a Settlement Class consisting of all holders of Equal Energy Ltd. ("Equal" or the "Company") common shares between the dates of December 9, 2013 and July 31, 2014; (c) direct mailing of the Notice of Pendency and Settlement of Class Actions ("Notice") and publication of the Publication Notice; and (d) schedule a hearing at which the Court will consider final approval of the Settlement set forth in the Stipulation.

As explained herein, Plaintiffs' Counsel are satisfied that the proposed Settlement is in the best interests of the Settlement Class and respectfully request the Court to preliminarily approve the Settlement and enter the Scheduling Order as submitted.

## BRIEF IN SUPPORT

## I.    FACTUAL BACKGROUND

On December 9, 2013, Equal announced that it had entered into a definitive agreement with Petroflow Canada Acquisition Corp. and Petroflow Energy Corporation

---

[1]    Unless otherwise defined herein, all capitalized terms have the same meanings ascribed to them in the Stipulation.

(collectively, "Petroflow"), pursuant to which, among other things, Petroflow would acquire all outstanding shares of common stock of Equal for $5.43 per share (the "Plan of Arrangement").

Beginning on December 12, 2013, complaints were filed in the District Court of Oklahoma County, State of Oklahoma, on behalf of holders of Equal common stock, naming as defendants Equal, members of Equal's Board of Directors (the "Board"), and Petroflow (the "State Actions").  Similar complaints were also filed in the United States District Court for the Western District of Oklahoma (the "Federal Actions") (the "State Actions" and the "Federal Actions" are referred to as the "Actions").  The Actions challenged the Plan of Arrangement, alleging, among other things, that certain defendants breached fiduciary obligations owed in connection with the Plan of Arrangement, that other defendants aided and abetted those breaches, that all Defendants violated the Alberta Business Corporations Act (the "ABCA"), and that the disclosures regarding the Plan of Arrangement failed to disclose material information.

Plaintiffs and their counsel conducted an investigation and discovery regarding their claims for injunctive and declaratory relief.  Plaintiffs also researched and prepared oppositions to Defendants' motions to dismiss the Actions and engaged in substantial arm's-length negotiations with Defendants regarding a possible resolution of the Actions.  As a result of these negotiations, counsel for the parties reached agreement for the inclusion of certain additional information in the Schedule 14A Definitive Proxy Statement filed with the SEC on June 11, 2014 ("Definitive Proxy").  On or around July 10, 2014, following additional negotiations, the parties entered into an agreement-in-principle to resolve the

Actions.  Thereafter, the parties executed a Memorandum of Understanding ("MOU").  The Plan of Arrangement closed on July 31, 2014.  On October 21, 2014, Plaintiffs' Counsel took the deposition of Donald Klapko to confirm the fairness and reasonableness of the Settlement.  The Stipulation was executed on November 14, 2014, and submitted to the Court.

The settlement on the terms set forth in the Stipulation reflects the results of the parties' negotiations and the terms of the MOU.  An agreement-in-principle was only reached after arm's-length negotiations between the parties who were all represented by counsel with extensive experience and expertise in shareholder class action litigation. During the negotiations, all parties had a clear view of the strengths and weaknesses of their respective claims and defenses.  Plaintiffs and their counsel have concluded that the additional disclosures provided Equal shareholders with information sufficient to make a fully informed decision on the Plan of Arrangement and provided material benefits to Settlement Class members.  As a result, Plaintiffs and their counsel believe that the Settlement is in the best interest of the Settlement Class.

## II.    TERMS OF THE SETTLEMENT

As a direct result of the prosecution of the Actions and the extensive ongoing negotiations between the parties, Equal has made additional disclosures concerning the Plan of Arrangement in the Definitive Proxy, filed with the SEC on June 11, 2014.  *See* Stipulation, ¶2.  These disclosures included information regarding, among other things: (1) potential transactions, including business combinations and acquisitions of the Company during 2013 with parties other than Petroflow, including the financial and non-financial

- 3 -

terms of various proposals and indications of interest for the Company and Equal's offer to make presentations to the managements of the two remaining bidders in late September 2013; (2) analyses completed by Global Hunter Securities, LLC ("GHS"), the independent financial advisor that Equal hired to provide a fairness opinion on the Plan of Arrangement, including the Selected Public Companies Analysis and the Implied Shareholder Rate of Return Analysis; and (3) the specific services that GHS provided to any parties involved with the Plan of Arrangement within the last two years and the compensation received for such services.  In addition, on May 29, 2014, GHS provided to the Equal Board a revised fairness opinion which provided more detail concerning the bases for its opinion that the "Transaction is fair, from a financial point of view, to such holders of common shares." Defendants acknowledge that the prosecution and settlement of the Actions were the sole cause of these additional disclosures.  *See* Stipulation, ¶2.

In addition, the Settlement provides that Defendants will pay, or cause to be paid to Plaintiffs' Counsel $650,000 for their attorneys' fees and expenses, subject to Court approval.  This amount was negotiated between the parties after all substantive provisions of the Settlement had been resolved.

## III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The law favors and encourages settlement of controversies.  *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997); *Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).  This is especially true in complex class actions such as this, "'where substantial judicial resources can be conserved by avoiding formal litigation.'"  *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 U.S. Dist. LEXIS

- 4 -

153803, at *4 (D. Kan. Oct. 26, 2012) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010)); *Big O Tires*, 167 F. Supp. 2d at 1229 ("Particularly in complex cases the litigants should be encouraged to determine their respective rights between themselves.").[2]

Although approval of a class action settlement is ultimately a two-stage process, at the preliminary approval stage, the court at most need only determine "'that there is . . . "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'"  *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 U.S. Dist. LEXIS 122593, at *10 (D. Colo. Aug. 28, 2013); *Manual for Complex Litigation* §13.14, at 173 (4th ed. 2004) ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing.").  Thus, preliminary approval is merited where:

> the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."

*In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012). In other words, "preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlement[]."  *In re Medical X-Ray Film Antitrust Litig.*, No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997).  Applying this standard, Plaintiffs respectfully submit that the preliminary approval of the Settlement is warranted.

---

[2]   Citations are omitted throughout unless otherwise noted.

Plaintiffs are now requesting that this Court take the first step in that process. The Court need only conclude that the settlement with Defendants on the agreed upon terms is within the range of possible approval to preliminarily approve the Settlement for the purposes of providing notice and holding a future fairness hearing.[3] Plaintiffs' Counsel believe that the Settlement achieved in the Actions easily meets the standards for not only preliminary approval but also final approval.

Here, the terms of the Settlement were fairly, honestly, and aggressively negotiated by all parties and substantial non-monetary benefits were obtained for Equal's shareholders that address the claims and relief sought in the Actions. Indeed, the Settlement is presumptively fair because it was reached through arm's-length negotiations between experienced counsel after sufficient litigation and discovery. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2002) (a "'"presumption of fairness, adequacy, and reasonableness attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel"'"); *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012) ("Class Counsel are both skilled and experienced, and used those skills and experience for the benefit of the class.").

---

[3]    As the *Manual for Complex Litigation* explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation*, *supra*, at §30.41. Without question, the Settlement here meets, indeed exceeds, these criteria.

- 6 -

Moreover, reference to factors considered by the courts in granting final approval of class action settlements lend support to the proposition that the Settlement is well within the range of possible approval. First, the terms of the Settlement are the product of arm's-length negotiations between the parties. The negotiations were at all times hard-fought and at arm's length. Second, Plaintiffs, through their counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence adduced to date, the likelihood of prevailing on those claims, the risk, expense, and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Plaintiffs did prevail at trial have concluded that the Settlement is clearly fair, reasonable, and adequate and in the best interest of the Settlement Class.[4]  Plaintiffs' Counsel have significant experience in complex class action litigation and have negotiated numerous other class action settlements throughout the country. It is well established that significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of the class. *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 U.S. Dist. LEXIS 14337, at *12 (C.D. Cal. June 10, 1992) (finding belief of counsel that proposed settlement represented the most beneficial result for the class is a compelling factor in approving the settlement).

---

[4]  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.").

The Settlement achieved substantial non-monetary benefits for Settlement Class members that address Plaintiffs' claims.  It is a fundamental tenet of corporate law that shareholders are entitled to be fully informed of all material facts concerning transactions requiring their approval.  *See, e.g.*, *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) (it is a "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action").  Full and complete disclosure in the context of securing shareholder approval requires that all material information be given to shareholders at the time they are being asked to vote.  *See, e.g.*, *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 126 (Del. Ch. 1986).  In *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970), the United States Supreme Court observed that "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action]" and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute." *Id.* at 395-96.  Benefits such as those obtained in the proposed settlement have frequently provided the basis for the resolution of shareholders' claims in courts nationwide.  *See, e.g.*, *Fletcher v. A. J. Indus., Inc.*, 266 Cal. App. 2d 313, 324-25 (1968) (stockholder suits where non-pecuniary benefits are obtained serve an important consideration of public policy).

The benefits of this Settlement should also be balanced against the expense and delay of litigating numerous pre-trial disputes.  While Plaintiffs believe that their claims have substantial merit, Defendants' liability was by no means a foregone conclusion.  The

outcome of the case was uncertain and, had it proceeded, Defendants would argue that they exercised valid "business judgment" with respect to all aspects of the Plan of Arrangement. The presumption of the business judgment rule favors defendants and creates a significant risk that Plaintiffs would not have prevailed. The likelihood of obtaining an injunction prior to the deadline for shareholders to make a decision with respect to their shares was uncertain given the requirement to demonstrate a significant likelihood of success on the merits and irreparable injury. Moreover, given the time constraints on Equal's shareholders with respect to their shares, Plaintiffs may not have been able to present the Court with a complete factual record in support of a motion for injunctive relief, thus further reducing the chances of success. Despite these risks, the Settlement has provided shareholders with a large portion of the relief sought by providing significant material information that enhanced each shareholder's ability to make a fully-informed decision with respect to their Equal shares. A balancing of these considerations supports approval of the Settlement.

In summary, although Plaintiffs believe that their case is meritorious, the benefits of the Settlement address the claims and relief sought while eliminating the risk, expense, and uncertainty of continued litigation. An evaluation of the benefits of the Settlement must be tempered by the recognition that any compromise involves concessions on the part of the settling parties. Indeed, the very essence of a settlement agreement is compromise, "'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624.

> "'Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.'"

*Id.* Accordingly, the fact that the Settlement Class potentially could have achieved a better recovery after trial does not preclude the Court from finding that the Settlement is within a "range of reasonableness" that is appropriate for approval.

While the parties believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked to permit notice of the terms of the Settlement to be given to the Settlement Class and schedule a hearing to consider any views by Settlement Class members of the fairness of the Settlement. Given the complexities of the dispute, and the uncertainties inherent in such complex litigation, the Settlement eliminates the risk that the Federal Action would be dismissed without any benefits or relief to the Settlement Class.

## IV.   CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT IS PROPER

As part of the Settlement, the parties have agreed to the certification of a Settlement Class defined as all holders of Equal common shares between the dates of December 9, 2013, and up to and including July 31, 2014, the date of the closing of the Plan of Arrangement, who are alleged to be harmed by Defendants as described in the Actions, including the legal representatives, heirs, successors-in-interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote, and excluding the Defendants and any person, trust, corporation or other entity related to or affiliated with any of them and their successors-in-interest.

Under Federal Rule of Civil Procedure 23(a), a class may be certified if: (i) it is so numerous that joinder of all members is impracticable (numerosity); (ii) there are questions of law and fact common to the class (commonality); (iii) the claims or defenses of the

representative parties are typical of the claims or defenses of the class (typicality); and (iv) the representative parties will fairly and adequately protect the interests of the class (adequacy). *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). The proposed class additionally must fall within one of the three categories of class actions defined in Federal Rule of Civil Procedure 23(b). *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *12-*13. Under these standards, certification of the proposed Settlement Class is appropriate.

### A. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Joinder need not be impossible; instead, the rule only requires that the hardship or inconvenience of joining all members makes use of the class action device appropriate. *In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d 1178, 1221-22 (D.N.M. 2012). Though the Tenth Circuit has not adopted a minimum presumption for numerosity, the Court may make ""'common sense assumptions'"" to support a finding that joinder is impracticable. *Id.* at 1221 (quoting *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002)). It is commonplace that in securities actions such as the one here, numerosity is easily presumed. *See, e.g.*, *Thornburg*, 912 F. Supp. 2d at 1233-34 (collecting cases); *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *19 (finding numerosity requirement satisfied "in light of the Settling Parties' representation that the Settlement Class consists of thousands of individuals").[5]

---

[5] *See also McEwen v. Digitran Sys.*, 160 F.R.D. 631, 636 (D. Utah 1994) ("The numerosity requirement of Rule 23 is satisfied in a securities fraud case if the stock at issue is nationally traded.").

There can be no dispute that the Settlement Class here satisfies the numerosity requirement.  During the relevant period, Equal's common stock traded on the New York Stock Exchange and the Toronto Stock Exchange.  During the relevant period, approximately 35.8 million shares of Equal common stock were outstanding, and owned by hundreds, if not thousands of persons.  Accordingly, there exists a common sense assumption that the numerosity requirement is met.

### B.     Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In other words, "plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class." *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *20.  Commonality does not require that class members share *all* issues in the suit, but rather "'only a single issue common to the class'" must exist. *Thornburg*, 912 F. Supp. 2d at 1222 (quoting *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289 (D.N.M. 2002)).  The commonality requirement is permissively applied in securities fraud actions.  *Thornburg*, 912 F. Supp. 2d at 1222 ("'Securities cases often involve allegations of common courses of fraudulent conduct, which can be sufficient to satisfy the commonality requirement.'"); *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *21 ("whether these material omissions and misrepresentations occurred is a factual and legal question that is common to the entire class and is capable of class wide resolution").[6]

---

[6]     *See also In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 87 (S.D.N.Y. 2004) ("In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied.").

The Actions necessarily encompass questions of law and fact common to all Settlement Class members that can be resolved in one swift stroke.  Here, Plaintiffs allege that Defendants breached their fiduciary duties to Equal's public shareholders in connection with the Plan of Arrangement, and that the disclosures regarding the Plan of Arrangement were deficient.  These facts and legal theories are common to all shareholders.  The commonality requirement is met.

### C.      Rule 23(a)(3): Typicality

The typicality requirement of Rule 23(a)(3) is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *22 (quoting *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  The inquiry focuses on whether the named plaintiffs' interests are sufficiently aligned with the class' interest as a whole.  *Thornburg*, 912 F. Supp. 2d at 1222-23.  Rule 23(a)(3) does not require, however, that plaintiffs' interests and claims be identical to those of the class.  Instead, "provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality."  *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *22 (citing *DG v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010)).

Here, Plaintiffs' claims for breach of fiduciary duty in connection with the Plan of Arrangement are identical to those of the other members of the Settlement Class.  Plaintiffs, like all members of the Settlement Class, held Equal shares during the relevant period, and have obtained curative disclosures regarding the Plan of Arrangement.  All Settlement Class

- 13 -

members hold claims identical to those pressed by Plaintiffs and the relief gained through the Settlement benefits Plaintiffs and Settlement Class members equally.  Thus, the typicality requirement of Rule 23(a)(3) is met.

### D.      Rule 23(a)(4): Adequacy of Representation

The adequacy prong of Rule 23 requires two showings: (i) there must be no antagonism or disabling conflict between the interests of the named class representatives (and their counsel) and the members of the class; and (ii) class counsel must be qualified, experienced, and generally able to vigorously prosecute the action on behalf of the class.  *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

Neither Plaintiffs nor their counsel have any interests antagonistic to those of the absent Settlement Class members.  Further, Plaintiffs and each member of the Settlement Class have strong and identical interests in establishing liability based on Defendants' alleged breaches of fiduciary duty.  In short, Plaintiffs are united in achieving the best recovery possible for the Settlement Class.  *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("'[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.'").

Moreover, Plaintiffs' Counsel have devoted substantial time and resources to investigating, initiating, and prosecute the Actions.  Counsel representing the Settlement Class in this case include qualified lawyers with thorough experience in successful prosecution of class actions.  *See, e.g.*, *Local 703, I.B. v. Regions Fin. Corp.*, 282 F.R.D. 607, 616 (N.D. Ala. 2012) ("'The knowledge and experience of Robbins Geller is not only

reflected in its firm resume, but has been previously recognized by a federal court which described it as "one of the most successful law firms in securities class actions, if not the preeminent one, in the country."") (quoting *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 789-90, 707 (S.D. Tex. 2008)), *aff'd*, 762 F.3d 1248 (11th Cir. 2014).  The adequacy requirement has been met.

### E.     Certification Is Maintainable Under Federal Rule of Civil Procedure 23(b)(2)

Rule 23(b)(2) requires plaintiffs to show that defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Here, Plaintiffs' claims are based on the same facts, legal theories and applicable law as those of Settlement Class members – for example, whether fiduciary duties were violated. Such claims are well-suited for mandatory class certification.  *See, e.g.*, *Turner v. Bernstein*, 768 A.2d 24 (Del. Ch. 2000):

> Typically an action challenging the propriety of director action in connection with a merger transaction is certified as a (b)(1) or (b)(2) class because [1] plaintiff seeks equitable relief (injunction); [2] because all members of the stockholder class are situated precisely similarly with respect to every issue of liability and damages; and [3] because to litigate the matters similarly would subject the defendant to the risk of difficult standards of conduct with respect to the same action.

*Id.* at 30-31.

Plaintiffs' claims were predominantly for injunctive and other equitable relief based upon, *inter alia*, allegations that Defendants breached their fiduciary duties to Equal shareholders in connection with the Plan of Arrangement by causing Equal to issue a misleading proxy and other communications in attempts to solicit shareholder approval of

the Plan of Arrangement.  The remedy obtained on behalf of Settlement Class members – the dissemination of the supplemental disclosures and the updated fairness opinion – is entirely equitable in nature.  As such, approval of a settlement certifying a non-opt-out class is appropriate.

### F.     Lead Counsel Should Be Appointed Class Counsel

Pursuant to the Federal Rules of Civil Procedure, "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  As discussed above, Lead Counsel have and will continue to fairly and adequately represent the Settlement Class.  Lead Counsel are intimately familiar with the facts of this case, knowledgeable of the applicable law, and extremely experienced in handling securities class actions.  To date, Lead Counsel have performed substantial work identifying and investigating the claims here, and have committed the necessary resources to vigorously prosecute the Actions on behalf of the Settlement Class.  Lead Counsel have extensive experience prosecuting securities class actions and have been responsible for achieving outstanding benefits for investors. Accordingly, Plaintiffs respectfully request that Lead Counsel be appointed as class counsel for the Settlement Class.

In sum, the Settlement Class meets all criteria for certification and should be certified for purposes of effectuating this Settlement.

## V.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the parties are requesting the Court to establish dates by which notice of the Settlement will be sent to potential Settlement Class members and by which Settlement Class members may object to the

Settlement, and to set the final approval hearing date.  The following is a proposed schedule of events leading to the final approval hearing.

| | |
|---|---|
| Notice mailed to Settlement Class members | 60 days prior to the final approval hearing ("Notice Date") |
| Publication Notice published for two days in *USA Today* | 60 and 59 days prior to the final approval hearing |
| Last day for Settlement Class members to object to the Settlement | 14 days prior to the final approval hearing |
| Date by which to file papers in support of the Settlement | 21 days before the final approval hearing |
| Date by which to file reply papers in support of the Settlement | 7 days before the final approval hearing |
| Final approval hearing | On or after 60 days after the Notice Date, at the Court's convenience |

This schedule is similar to those used in numerous class action settlements and provides due process to Settlement Class members with respect to their rights concerning the Settlement.

## VI.    CONCLUSION

In the judgment of Plaintiffs' Counsel, the proposed Settlement is a fair compromise of the issues in dispute.  After weighing the benefits of this Settlement against the uncertainty and risks of continued litigation, Plaintiffs and their counsel believe that the proposed Settlement is fair, reasonable, and adequate and warrants preliminary approval.

- 17 -

Plaintiffs respectfully request the Court to preliminarily approve the proposed Settlement and enter the Scheduling Order.

DATED:  November 14, 2014        Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
ELLEN GUSIKOFF STEWART
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
EDWARD M. GERGOSIAN


_____s/ Ellen Gusikoff Stewart_____
ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
randyb@rgrdlaw.com
elleng@rgrdlaw.com
ricka@rgrdlaw.com
dwissbroecker@rgrdlaw.com
egergosian@rgrdlaw.com

Interim Lead Counsel for Plaintiffs

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY
(OBA No. 14542)
4800 North Lincoln Boulevard
Oklahoma City, OK 73105
Telephone:  405/528-6569
405/528-6462 (fax)
dderryberry@derryberrylaw.com

Liaison Counsel for Plaintiffs

- 18 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 14, 2014.

<div style="margin-left:40%">

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  elleng@rgrdlaw.com

</div>

# Mailing Information for a Case 5:14-cv-00087-C Cooke et al v. Equal Energy Ltd et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jessica M Andrade**
  andrade.jessica@dorsey.com,summers.shawn@dorsey.com,griffith.michelle@dorsey.com

- **Jodi C Cole**
  jodi.cole@mcafeetaft.com,valary.gwinn@mcafeetaft.com,annette.strother@mcafeetaft.com

- **Darren B Derryberry**
  dderryberry@derryberrylaw.com,kreynolds@derryberrylaw.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com,jstark@rgrdlaw.com

- **James E Howard**
  howard.james@dorsey.com,summers.shawn@dorsey.com,griffith.michelle@dorsey.com,funk.samantha@dorsey.com

- **Robert J Kopecky**
  rkopecky@kirkland.com

- **Michael D McClintock**
  michael.mcclintock@mcafeetaft.com,keeli.gardner@mcafeetaft.com

- **Jack C Moore**
  jack.moore@andrewshartman.com,adminmail@andrewshartman.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael E Smith**
  mesmith@hallestill.com,crisi@hallestill.com,athacker@hallestill.com

- **David T Wissbroecker**
  dwissbroecker@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)