UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANDREW COOKE, ON BEHALF OF THE ANDREW R. COOKE 1998 TRUST, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Master Docket No. 5:14-cv-00087-C (Consolidated with Nos. 5:14-cv-00047-C; 5:14-cv-00058-C; and 5:14-cv-00114-C) |
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| EQUAL ENERGY LTD., et al., | ) ) | |
| Defendants. | ) ) | |

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................... 1

II.    THE SUBSTANTIAL BENEFITS OF THE SETTLEMENT ............................... 5

    A.    Disclosures Concerning the Sales Process for the Company ...................... 6

    B.    Disclosures Concerning Financial Projections and GHS' Financial Analyses ......................................................................... 8

III.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ............................................................... 9

    A.    The Settlement Was Fairly and Honesty Negotiated ................................ 11

    B.    Serious Questions of Law and Fact Existed that Created Significant Risk of Obtaining a More Favorable Result After Continued Litigation .................................................................... 11

    C.    The Recommendation of Experienced Counsel Weighs Heavily in Favor of Approval of the Settlement ......................................... 13

    D.    Reaction of the Settlement Class Supports Final Approval ...................... 14

IV.    THE COURT SHOULD AFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS .......................................................... 14

V.    THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED ............................................. 15

    A.    Negotiated Fees Are Encouraged by the Courts ..................................... 15

    B.    The Substantial Benefits Conferred on the Settlement Class Strongly Support the Award of Fees and Expenses ................................ 17

    C.    Consideration of the Relevant "*Johnson* Factors" Further Supports the Negotiated Fees and Expenses ........................................ 20

        1.    Time and Labor Involved ...................................................... 21

        2.    The Novelty and Difficulty of the Questions Raised by the Actions ........................................................................ 22

        3.    The Skill Required to Perform the Legal Services Properly and the Experience and Reputations of Plaintiffs' Counsel ............ 22

**Page**

4.     The Preclusion of Other Employment by Attorneys Due to Acceptance of the Case ...................................................................... 23

5.     Time Limitations Imposed by Client or Circumstances .................. 23

6.     Whether the Fee Is Fixed or Contingent .......................................... 23

7.     The Amount Involved and the Results Obtained ............................ 24

8.     The Customary Fee and Awards in Similar Cases .......................... 25

VI.     CONCLUSION .................................................................................... 25

1011735_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alvarado Partners, L.P. v. Mehta*,
   723 F. Supp. 540 (D. Colo. 1989) ..................................................................... 9, 10, 13

*Arnold v. Soc'y for Sav. Bancorp.*,
   650 A.2d 1270 (Del. 1994) ................................................................................. 7

*Aronson v. Lewis*,
   473 A.2d 805 (Del. 1984) .................................................................................. 12

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
   906 A.2d 114 (Del. 2006) .................................................................................. 12

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) .......................................................................... 20

*Call 4U, Ltd. v. Goodman Global, Inc.*,
   No. 2007-66888, slip op.
   (Harris County Tex. May 13, 2009) .................................................................. 17

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ............................................................................................. 9

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................................. 19

*Dow Jones & Co. v. Shields*,
   No. 184, 1992 Del. Ch. LEXIS 24
   (Del. Ch. Mar. 4, 1992) .................................................................................... 17

*Edrington v. Johnson*,
   No. 1:08-CV-118013, slip op.
   (Santa Clara Super. Ct. July 27, 2009) ...................................................... 17, 20

*Eisenberg v. Chicago Milwaukee Corp.*,
   No. 9374, 1988 Del. Ch. LEXIS 141
   (Del. Ch. Oct. 25, 1988) ................................................................................... 18

*Gottlieb v. Wiles*,
   11 F.3d 1004 (10th Cir. 1993) ............................................................... 10, 11, 12

- iii -

**Page**

*Hall v. Cole*,
   412 U.S. 1 (1973) ........................................................................................ 17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .............................................................................. 15, 24

*In re ADC Telecomms., Inc. S'holder Litig.*,
   No. 27-cv-10-17053, slip op.
   (Hennepin Cnty. Minn. Mar. 10, 2011) ..................................................... 17

*In re Aeroflex S'holders Litig.*,
   No. 003943/2007, slip op.
   (N.Y. Super. Ct. June 30, 2009) ................................................................ 17

*In re Anderson Clayton S'holders' Litig.*,
   No. 8387, 1988 Del. Ch. LEXIS 127
   (Del. Ch. Sept. 19, 1988) .......................................................................... 17

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..................................................................... 25

*In re FLS Holdings, Inc. S'holder Litig.*,
   No. 12623, 1993 Del. Ch. LEXIS 57
   (Del. Ch. Apr. 21, 1993) ........................................................................... 18

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976) .......................................................... 9, 13

*In re Netsmart Techs., Inc. S'holder Litig.*,
   924 A.2d 171 (Del. Ch. 2007) ..................................................................... 8

*In re New Mexico Natural Gas Antitrust Litig*
   607 F. Supp. 1491 (D. Colo. 1984) ........................................................... 10

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
   No. 888, 1994 U.S. Dist. LEXIS 6621
   (E.D. La. May 18, 1994) ............................................................................ 24

*In re Pure Res., Inc., S'holder Litig.*,
   808 A.2d 421 (Del. Ch. 2002) ..................................................................... 9

1011735_1

**Page**

*In re Rambus Inc. Derivative Litig.*,
    No. C 06-3513 JF(HRL), 2009 U.S. Dist. LEXIS 131845
    (N.D. Cal. Jan. 20, 2009) ............................................................................... 14

*In re Resorts Int'l S'holder Litig.*,
    No. 9470, 1990 Del. Ch. LEXIS 167
    (Del. Ch. Oct. 11, 1990) ................................................................................. 16

*In re Staples, Inc. S'holders Litig.*,
    792 A.2d 934 (Del. Ch. 2001) ......................................................................... 19

*In re Talley Indus., Inc. S'holder Litig.*,
    No. 15961, 1998 Del. Ch. LEXIS 53
    (Del. Ch. Apr. 13, 1998) ........................................................................ *passim*

*In re UICI S'holders Litig.*,
    No. 05-09693, slip op.
    (Dallas County Tex. Oct. 5, 2006) ................................................................. 17

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................. 24

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ..................................................................... 16

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .......................................................................... 20

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) .................................................................... 9, 10

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
    11 A.3d 1175 (Del. Ch. 2010) ........................................................................... 8

*McMullin v. Beran*,
    765 A.2d 910 (Del. 2000) ............................................................................... 22

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ................................................................................... 6, 18

*Nagy v. Bistricer*,
    770 A.2d 43 (Del. Ch. 2000) ............................................................................. 7

**Page**

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 14

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .............................................................................. 13, 16

*Parnes v. Bally Entm't Corp.*,
    722 A.2d 1243 (Del. 1999) ...................................................................................... 22

*Rinderknecht v. Kerr-McGee Corp.*,
    No. CJ-2006-5204, slip op.
    (Oklahoma Cnty. Okla. Nov. 28, 2006) ................................................................ 17

*Rosenblatt v. Getty Oil Co.*,
    493 A.2d 929 (Del. 1985) .......................................................................................... 5

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) .............................................................................. 10

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) .................................................................................... 14

*Stroud v. Grace*,
    606 A.2d 75 (Del. 1992) ............................................................................................ 5

*Sugarland Indus. v. Thomas*,
    420 A.2d 142 (Del. 1980) ........................................................................................ 17

*Tandycrafts, Inc. v. Initio Partners*,
    562 A.2d 1162 (Del. 1989) ...................................................................................... 18

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976) ............................................................................................ 6, 18

*Uselton v. Commercial Lovelace Motor Freight*,
    9 F.3d 849 (10th Cir. 1993) .................................................................................... 20

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ...................................................................................... 11

- vi -

**Page**

*Wis. Inv. Bd. v. Bartlett*,
   No. 17727, 2002 Del. Ch. LEXIS 42 (Del. Ch. Apr. 9, 2002),
   *aff'd*, 808 A.2d 1205 (Del. 2002) ........................................................................ 18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78n(a) ................................................................................................................ 2

Alberta Business Corporations Act
   §154 .................................................................................................................... 2

Federal Rules of Civil Procedure
   Rule 23(e) ........................................................................................................... 9
   Rule 30(b)(6) ....................................................................................................... 3

**SECONDARY AUTHORITY**

Robert B. Thompson & Randall S. Thomas, *The New Look
of Shareholder Litigation: Acquisition-Oriented Class Actions*,
   57 Vand. L. Rev. 133 (2004) ........................................................................... 22

- vii -

Plaintiffs Andrew Cooke, on behalf of the Andrew R. Cooke 1998 Trust, Kenneth and Aldona Olsen, John Solak, Abraham Grinberger, Johan Van Weelden, Anthony Montemarano, and Jonathan Scripture ("Plaintiffs") respectfully submit this memorandum of points and authorities in support of final approval of the settlement of the above-captioned action on the terms set forth in the Stipulation and Agreement of Compromise, Settlement, and Release dated November 14, 2014 ("Stipulation") (Dkt. No. 60)[1] and for entry of the Federal Court Order and Final Judgment agreed upon by the parties.  The settlement is on behalf of a Settlement Class consisting of all holders of Equal Energy Ltd. ("Equal" or the "Company") common stock at any time from December 9, 2013 through and including July 31, 2014.

As explained herein, Lead Counsel firmly believe that based upon the material disclosures obtained for Equal shareholders in advance of the shareholder vote on the Acquisition, the settlement is in the best interest of the Settlement Class and recommend that it be approved by the Court.[2]

## I.    INTRODUCTION

This litigation arose out of the Plan of Arrangement entered into by Equal with Petroflow Canada Acquisition Corp. ("Petroflow Canada") and Petroflow Energy Corporation (collectively, "Petroflow"), pursuant to which Petroflow would acquire all of the outstanding shares of Equal stock for $5.43 per share (the "Acquisition").  In connection

---

[1]    Unless otherwise defined herein, all capitalized terms have the same meanings ascribed to them in the Stipulation.

[2]    A detailed description of the procedural and factual history of the litigation, the efforts of Plaintiffs' Counsel, and the specific provisions and benefits of the settlement are contained in the Declaration of David T. Wissbroecker in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Wissbroecker Decl."), submitted herewith.

with the Acquisition, Equal filed with the U.S. Securities and Exchange Commission ("SEC") a Preliminary Proxy Statement (the "Preliminary Proxy") disclosing the Equal Board of Director's ("Equal Board") recommendation that Equal stockholders vote their shares in favor of the Acquisition.

On and after January 15, 2014, four complaints seeking injunctive relief only were filed in this Court against Equal, its directors and Petroflow, alleging, among other things, that the Equal Board had breached its fiduciary duties in connection with its consideration of the proposed Acquisition; that Equal and Petroflow had aided and abetted those breaches; and that all defendants named therein had violated §14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (the "Federal Actions").[3]  The Federal Actions were consolidated by the Court, and a Lead Plaintiff and Interim Lead Counsel were appointed.  Wissbroecker Decl., ¶26.

Plaintiffs and their counsel vigorously prosecuted their claims for injunctive relief. After the announcement of the Acquisition, Plaintiffs and their counsel conducted an investigation of Defendants' actions in connection with the proposed sale of the Company, including a thorough review and analysis of relevant SEC filings, press releases, and analyst reports about the Acquisition, Equal, and Petroflow; prepared and filed initial and amended

---

[3]    Beginning on December 12, 2013, four complaints were filed in the District Court of Oklahoma County for the State of Oklahoma (the "State Court") asserting claims against the Defendants for breach of fiduciary duty in connection with the Acquisition.  Two of the complaints also alleged that all defendants violated Section 154 of the Alberta Business Corporations Act.  These actions were consolidated by the State Court (the "State Action"). Plaintiffs in the State Action are parties to the Stipulation.  Upon final approval of the settlement in this Action, and pursuant to the terms of the Stipulation, the parties to the State Action will dismiss that action with prejudice.  The State Action and the Federal Actions are referred to herein as the "Actions."

- 2 -

complaints; prepared and served document requests and subpoenas; prepared and filed a motion for expedited discovery and an *ex parte* motion for an order shortening time on the *ex parte* motion; negotiated with Defendants to produce expedited discovery; reviewed hundreds of pages of documents produced by Defendants; retained a financial expert; demanded that Defendants fully disclose all material information in connection with the Acquisition; and conducted substantial negotiations with counsel for Defendants regarding disclosure of this information. Wissbroecker Decl., ¶4. As such, this settlement was not arrived at until after Plaintiffs' Counsel had expended a substantial effort over a necessarily short period of time.[4]

As a result of Plaintiffs' Counsel's investigative efforts it was determined that the disclosures being made to the Company's public shareholders were inadequate, and that Defendants were withholding certain material information from shareholders necessary for Equal shareholders to make a fully-informed decision regarding the Acquisition. *Id.*, ¶32. Accordingly, Plaintiffs' Counsel focused their efforts on ensuring that Equal public shareholders would not be required to vote on the Acquisition without full and fair information about the process leading to entry of the Plan of Arrangement, the Company's intrinsic value and the fairness analyses conducted by the Company's financial advisor, Global Hunter Securities, LLC ("GHS"). *Id.*, ¶5. Plaintiffs' Counsel worked vigorously to secure disclosure of this material information (the "Supplemental Disclosures"). The Supplemental Disclosures, which Defendants disclosed in Equal's Definitive Proxy that was filed with the SEC on June 11, 2014 ("Definitive Proxy"), provided Equal shareholders with

---

[4]   Plaintiffs also conducted a Rule 30(b)(6) deposition of a Company designee to further confirm the fairness and adequacy of the settlement.

material information that enabled them to make an informed decision regarding the Acquisition.  *Id.*, ¶46; Stipulation, Exhibit 1.

After the parties negotiated the substantive terms of the settlement for the benefit of the Settlement Class, the parties turned to the amount of attorneys' fees and expenses that would be paid to Plaintiffs' Counsel.  Wissbroecker Decl., ¶48.  As a result of these negotiations, Equal or its successor, on behalf of Defendants, has agreed to pay, or cause to be paid, the sum of $650,000 to Plaintiffs' Counsel for their attorneys' fees and expenses.  The negotiated amount of attorneys' fees reflects in part, the parties' experience as to what is an appropriate fee under the circumstances of this litigation, including the result achieved for the benefit of the Settlement Class and fee awards in similar cases.  Importantly, the negotiated amount of attorneys' fees and expenses will in no way diminish the payments (*e.g.*, merger consideration) already received by the Settlement Class nor financially impact any member of the Settlement Class as they are all former holders of Equal common stock.

Plaintiffs' Counsel, who are well-respected and experienced in prosecuting shareholder class actions, have concluded that the additional material disclosures obtained for the Settlement Class is a highly favorable result and in the best interest of the Settlement Class.  Wissbroecker Decl., ¶¶69-70.  Members of the Settlement Class appear to agree with counsel's conclusions.  The Court granted preliminary approval of the settlement on December 15, 2014.  Dkt. No. 61.  In accordance with the Preliminary Approval Order, the Notice of Settlement of Class Actions has been mailed to potential members of the Settlement Class.  *See* Paragraphs 3-10 to the Affidavit of Jason Rabe Regarding (A) Mailing of the Notice; (B) Publication of the Publication Notice; and (C) Report on Objections

Received to Date, dated March 6, 2015 (Dkt. No. 65-1).  The Publication Notice was published in the national edition of *USA Today* on two occasions.  *Id.*, ¶11.  While the date by which to object to the settlement – March 24, 2015 – has not yet expired, as of the date of this memorandum, not a single objection to any aspect of the settlement has been received by counsel.[5]

For all the reasons set forth herein and in the Wissbroecker Declaration, Plaintiffs' Counsel respectfully requests that the Court enter the Federal Court Order and Final Judgment agreed to by the parties.

## II.    THE SUBSTANTIAL BENEFITS OF THE SETTLEMENT

The settlement on the terms set forth in the Stipulation was reached only after arm's-length negotiations between the parties who were all represented by counsel with extensive experience and expertise in shareholder class action litigation.  During the negotiations all parties had a clear view of the strengths and weaknesses of their respective claims and defenses.  As a result of the settlement, Defendants made the Supplemental Disclosures concerning the Acquisition in the Definitive Proxy, as discussed below.  It is a basic tenet of corporate law that companies are required to fully and fairly disclose all material information within their control when they seek shareholder action.  *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985); *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) (it is a "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks

---

[5]    Should any objections be timely received, Plaintiffs' Counsel will address them in a reply brief to be filed on March 31, 2015.

shareholder action").[6]  This requires disclosure of all facts that would be considered by the reasonable shareholder, even though such facts might not cause that shareholder to change his or her vote.  *See TSC Indus. v. Northway, Inc.*, 426 U.S. 438 (1976).  Here, Plaintiffs' Counsel ensured that Equal shareholders were provided with all material information so that they could make an informed vote on the Acquisition.

Disclosure benefits similar to those obtained here have frequently provided the basis for class-wide resolution of shareholder claims nationwide.  *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970).  In *In re Talley Indus., Inc. S'holder Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 13, 1998), the court in approving a settlement comprised of additional disclosures concerning oppositions to the merger, the existence and value of other offers, and an analysis of company's liquidation value, noted that these disclosures provided "substantial . . . benefit[s] to the members of the class."  As discussed herein, the settlement provides similar benefits to members of the Settlement Class.

A.     **Disclosures Concerning the Sales Process for the Company**

The Preliminary Proxy purported to inform Equal shareholders of the reasons why, as a matter of process, the offer from Petroflow was the best offer available to the Company. The Supplemental Disclosures provided shareholders with additional and important information about the sales process for the Company, including: (i) that between March 26 and 27, 2013, Equal engaged in discussions with Montclair Energy, LLC ("Montclair") and six other parties, all of which were strategic buyers; (ii) that while expressing an interest to participate in the process, some of these parties did not provide formal offers that included

---

[6]     A significant amount of merger litigation takes place in the Delaware Court of Chancery; therefore, decisions from that Court are instructive and are cited herein.

indicative values for Equal, but instead indicated they would require further time and information before providing a formal offer, and that one interested party did provide Equal with presentation materials indicating that it would be prepared to provide a formal offer involving a combination of equity and cash for an implied price of approximately CDN $3.34 per Equal share; (iii) that the Equal Board decided that Company A's April 23, 2013 proposal significantly under-valued Equal and was not in the best interests of Equal; (iv) that the financial terms presented in the May 1, 2013, indication of interest from Company B involved a combination of equity and cash for an implied price of approximately USD $5.20 per Equal share at the time of such proposal; and (v) that because Montclair had technical difficulties accessing the virtual data room Equal and GHS offered to make a presentation to the management of Petroflow and Montclair, and that while Petroflow accepted Equal's offer for a presentation, Montclair declined.  Wissbroecker Decl., ¶54.

This information was material because shareholders are entitled to know whether the Equal Board adequately discharged its duties to secure the best price possible for shareholders by running a sales process that evenly treated all bidders, and provided potential buyers with all the information they needed to make their best offer for the Company.  With this information, shareholders were in a position to determine whether there were any conflicts, actual or perceived, that unduly burdened the sales process.  As Delaware courts have held, a board is required to set forth the events surrounding the sales process leading up to a deal.  *See, e.g.*, *Nagy v. Bistricer*, 770 A.2d 43, 60 (Del. Ch. 2000) (holding that stockholders are entitled to an accurate description of the "process" directors used "in coming to their decision to support the Merger"); *Arnold v. Soc'y for Sav. Bancorp.*, 650

- 7 -

A.2d 1270, 1280 (Del. 1994) (holding that once the board "travel[s] down the road of partial disclosure of the history leading up to the Merger . . . they ha[ve] an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events").

### B.    Disclosures Concerning Financial Projections and GHS' Financial Analyses

Plaintiffs alleged that the Preliminary Proxy omitted material information regarding management's updated projections relied upon by GHS in its fairness analysis, as well as the specific services that GHS provided to any of the parties to the Plan of Arrangement within the prior two years.  The Delaware Court of Chancery has held that the disclosure of financial projections is material because projections provide stockholders with a basis to better understand the expected future performance of a Company, and assist stockholders in understanding the fairness opinion of a financial advisor and deciding how to cast their vote. *In re Netsmart Techs., Inc. S'holder Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007); *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010) ("[M]anagement's best estimate of the future cash flow of a corporation that is proposed to be sold in a cash merger is clearly material information.").

Here, the Supplemental Disclosures provided shareholders with management's updated (as of May 29, 2014) projections relied upon by GHS in its fairness analysis. Wissbroecker Decl., ¶57.  This information was material to Equal's shareholders because the information pertaining to the Company's projections afforded stockholders considerably greater ability to assess Equal's worth and the adequacy of the offer price. *Maric Capital*, 11 A.3d at 1178.

- 8 -

Additionally, material facts regarding analyses prepared by GHS were not disclosed in the Preliminary Proxy and thus resulted in material omissions. *See* Wissbroecker Decl., ¶61. Here, the Supplemental Disclosures provided shareholders with key components of GHS' fairness analyses that were previously undisclosed that supported GHS' conclusion of fair value and upon which the Equal Board relied in recommending the Acquisition. Wissbroecker Decl., ¶¶62-67. "[S]tockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely." *See In re Pure Res., Inc., S'holder Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002).[7]

## III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

Courts have repeatedly recognized, under Federal Rule of Civil Procedure 23(e), that a court should approve the settlement of a class action if it is "fair, reasonable and adequate." *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989). In making that evaluation, courts are afforded broad discretion. *Jones*, 741 F.2d at 324.

Nevertheless, as the United States Supreme Court has counseled, courts should "not decide the merits of the case or resolve unsettled legal questions" in determining whether to approve a settlement. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981); *accord, e.g.*, *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) (the "[c]ourt need not, and

---

[7]   In addition, on May 29, 2014, GHS provided to the Equal Board a revised fairness opinion which provided more detail concerning the bases for its opinion that the "Transaction is fair, from a financial point of view, to such holders of common shares." Wissbroecker Decl., ¶6.

should not, decide the merits of the controversy").  Nor should courts impose their will upon parties who have come to a negotiated resolution after arm's length bargaining.  As the court held in *In re New Mexico Natural Gas Antitrust Litig.*:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned.  Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. . . .  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

607 F. Supp. 1491, 1497 (D. Colo. 1984) (citation omitted).

Beyond the general public policy favoring settlement of class actions, the Tenth Circuit Court of Appeals has identified a number of factors that should be considered by courts in making the required determination whether class action settlements should be approved.  In *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), the court held that the district courts should consider the following four factors "in assessing the adequacy of the settlement": (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.  *Accord*, *e.g.*, *Jones*, 741 F.2d at 324; *Alvarado Partners*, 723 F. Supp. at 546; *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (affirming the test to be applied in determining fairness of a settlement).

- 10 -

As set forth below, each of the foregoing factors amply supports the determination that the settlement is fair, reasonable, and adequate and in the best interests of members of the Settlement Class. Therefore, the settlement should be approved by the Court in all respects.

### A.     The Settlement Was Fairly and Honesty Negotiated

One of the factors highlighted by courts as critical to any assessment of the merits of a settlement – whether the proposed settlement was fairly and honestly negotiated – fully supports the conclusion that the settlement merits the Court's approval. *See Gottlieb*, 11 F.3d at 1014. Courts have focused on whether the settlement was achieved through "arm's-length negotiations" by counsel who have "the experience and ability . . . necessary [for] effective representation of the class's interests." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

This settlement is the product of vigorous arm's-length negotiations by counsel with significant expertise and experience in shareholder litigation. The terms of the settlement were extensively debated and negotiated with the resulting relief being the product of compromise by all parties. Wissbroecker Decl., ¶¶42-46. Settlement negotiations were at arm's length and hard fought by experienced counsel, supporting approval.

### B.     Serious Questions of Law and Fact Existed that Created Significant Risk of Obtaining a More Favorable Result After Continued Litigation

The second and third factors identified by the Tenth Circuit, whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt, and whether the value of an immediate recovery outweighs the mere possibility of future relief after

- 11 -

protracted and expensive litigation, fully support approval of the settlement. *See Gottlieb*, 11 F.3d at 1014. This complex shareholder litigation presented a panoply of complex factual and legal issues making its outcome uncertain at best. Prior to reaching this settlement, Plaintiffs' Counsel had obtained sufficient information to weigh the benefits of the settlement against the risks of continued litigation. As discussed above the settlement provides substantial benefits to Equal shareholders that allowed them to make a fully informed decision on the Acquisition. The benefits of the settlement must be weighed against the risk of obtaining a better result after continued litigation.

While Plaintiffs' Counsel believe the case is meritorious, Defendants would argue that they exercised valid "business judgment" with respect to all aspects of the Acquisition. Defendants would contend that pursuant to the business judgment rule, the corporate directors are presumed to have "'acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company.'" *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906 A.2d 114, 120 (Del. 2006) (citation omitted). "Absent an abuse of discretion, [the] judgment will be respected by the courts. The burden is on the party challenging the decision to establish facts rebutting the presumption." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). The business judgment rule favors defendants and created a significant risk that Plaintiffs would not have prevailed.

Importantly, the settlement obtained for shareholders much of the injunctive relief sought in the Actions by providing significant additional material information that enhanced shareholders' ability to make a fully-informed decision on the Acquisition. Wissbroecker Decl., ¶¶29-41. As the court in *Talley* aptly observed, "the timely disclosure of the

- 12 -

information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process." *Talley*, 1998 Del. Ch. LEXIS 53, at *46. Plaintiffs' Counsel weighed the uncertainty, delay, and expense of continued litigation against the likelihood of obtaining a better result after continued litigation. Based on their evaluation, Plaintiffs' Counsel determined that the settlement provides Equal shareholders with substantial benefits that directly address the claims and relief sought in the litigation and therefore is in the best interest of the Settlement Class. Wissbroecker Decl., ¶¶50-52.

An evaluation of the settlement must also be tempered by the recognition that any compromise involves concessions on the part of the settling parties. Indeed, the very essence of a settlement agreement is compromise, "'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). "'"Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."'" *Id.* (citation omitted).

### C.   The Recommendation of Experienced Counsel Weighs Heavily in Favor of Approval of the Settlement

Courts have long recognized that the opinion of experienced counsel who litigated the case, negotiated the compromise, and support the settlement is entitled to considerable weight. *See, e.g.*, *Alvarado Partners*, 723 F. Supp. at 548; *King Res.*, 420 F. Supp. at 625 ("Courts have consistently refused to substitute their business judgment for that of counsel,

absent evidence of fraud or overreaching.").  Here, Plaintiffs' Counsel have extensive experience in shareholder class actions in general, and merger and acquisition cases in particular, having prosecuted numerous similar actions in courts nationwide.  Counsel used that expertise and experience to efficiently and effectively prosecute this litigation, reaching a highly favorable result for Equal shareholders.  Where, as here, the settlement is the product of serious, informed, and non-collusive negotiations, "'the trial judge . . . should be hesitant to substitute its own judgment for that of counsel.'"  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted).

### D.     Reaction of the Settlement Class Supports Final Approval

Courts have noted that "'the reaction of the class to the proffered settlement . . . is perhaps the most significant factor to be weighed in considering its adequacy.'"  *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF(HRL), 2009 U.S. Dist. LEXIS 131845, at *10 (N.D. Cal. Jan. 20, 2009) (citation omitted).  In cases where there is a limited number of objectors, courts have held that the lack of objections strongly militates in favor of approving the settlement.  *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 117-19 (3d Cir. 1990) (objections by "only" 29 members of 281 member class "strongly favors settlement").  In this case, the number of objectors – none – demonstrates that members of the Settlement Class view Plaintiffs' Counsel's efforts in a very positive light.

## IV.     THE COURT SHOULD AFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS

In presenting the proposed settlement for preliminary approval, Plaintiffs requested that the Court certify a Settlement Class so that notice of the proposed settlement, the final approval hearing and the rights of members of the Settlement Class could be issued.  In its

Preliminary Approval and Scheduling Order, entered on December 15, 2014, this Court preliminarily certified a Settlement Class. *See* Dkt. No. 61, ¶¶2-3. Nothing has changed to alter the propriety of the Court's certification and, for all the reasons stated in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Brief in Support (Dkt. No. 59), incorporated herein by reference, Plaintiffs now request that the Court reiterate its prior certification of the Settlement Class.

## V.    THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

### A.    Negotiated Fees Are Encouraged by the Courts

Plaintiffs' Counsel's efforts in prosecuting the Actions and negotiating the settlement have conferred substantial benefits on Equal shareholders. *See generally* Wissbroecker Decl. After vigorous arm's-length negotiations concerning the principal terms of the settlement, the parties reached an agreement that Equal or its successor, on behalf of itself and for the benefit of Defendants would pay $650,000 to Plaintiffs' Counsel in the Actions for their attorneys' fees and expenses. *Id.*, ¶48; Stipulation, ¶20.

The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." As the Ninth Circuit Court of Appeals has stated: "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

- 15 -

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

The amount negotiated and agreed to in part reflects the parties' experience as to what is appropriate for the benefits obtained and will fairly compensate Plaintiffs' Counsel for their work in obtaining the substantial benefits for Equal shareholders. Where there is no evidence of collusion and no detriment to the parties, a court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001). Thus, the Court's role in overseeing the fee provision in the present context is different from that in the traditional "common fund" case, in which the awarded fee is subtracted from the total amount of money and/or benefits made available to the class, thereby the amount of any fee awarded, by definition, diminishes the benefits the class would otherwise receive. This is also different from a "statutory fee shifting" case, in which the defendant has not agreed to pay plaintiffs' counsel's fee and thus reserves the right to challenge every item of work performed that underlies the requested fee. Here, after arm's-length negotiations, Defendants' counsel, who had every incentive to negotiate a fee award that was fair and in the best interest of their clients, negotiated and ultimately agreed with Plaintiffs' Counsel on a sum and agreed to pay $650,000, subject to Court approval. Importantly, the fee and expense amount negotiated here will not affect the consideration to be received by members of Settlement Class as the Acquisition has already closed. *See In re Resorts Int'l S'holder Litig.*, No. 9470, 1990 Del. Ch. LEXIS 167, at *17 (Del. Ch. Oct. 11, 1990) ("Significantly, the attorneys' fees will be borne directly by [the company] and not by the class.").

- 16 -

1011735_1

The parties' agreement on the amount of fees is also consistent with or less than other negotiated fees approved in other similar merger and acquisition cases. The approval of settlements and attorneys' fees in footnote 8 below and numerous others confirm the substantial benefits provided by Plaintiffs' Counsel in obtaining the additional disclosures, and fully support the fee negotiated here.[8]

### B.    The Substantial Benefits Conferred on the Settlement Class Strongly Support the Award of Fees and Expenses

Courts throughout the United States, including the Supreme Court, focus on the benefits achieved in the litigation as the primary factor in evaluating a fee request. *See, e.g.*, *Hall v. Cole*, 412 U.S. 1, 5 (1973) (the payment of attorneys' fees is appropriate where plaintiffs' litigation results in a "'substantial benefit [for] members of an ascertainable class'") (citation omitted); *see also Sugarland Indus. v. Thomas*, 420 A.2d 142, 152 (Del. 1980); *Dow Jones & Co. v. Shields*, No. 184, 1992 Del. Ch. LEXIS 24, at *5 (Del. Ch. Mar. 4, 1992); *In re Anderson Clayton S'holders' Litig.*, No. 8387, 1988 Del. Ch. LEXIS 127, at *1 (Del. Ch. Sept. 19, 1988). Courts have consistently placed a significant value

---

[8]    *In re ADC Telecomms., Inc. S'holder Litig.*, No. 27-cv-10-17053, slip op. at 7 (Hennepin Cnty. Minn. Mar. 10, 2011) (awarding $925,000 in fees and expenses for settlement providing additional disclosures); *Edrington v. Johnson*, No. 1:08-CV-118013, slip op. (Santa Clara Super. Ct. July 27, 2009) (awarding $850,000 in fees and expenses for additional disclosures); *In re UICI S'holders Litig.*, No. 05-09693, slip op. (Dallas County Tex. Oct. 5, 2006) (awarded negotiated fee amount of $950,000 where benefit consisted of additional disclosures in Form 8-K and definitive proxy statement); *Call 4U, Ltd. v. Goodman Global, Inc.*, No. 2007-66888, slip op. (Harris County Tex. May 13, 2009) (awarded negotiated fee of $890,000 for additional disclosures contained in Form 8-K and modifications to the merger agreement); *In re Aeroflex S'holders Litig.*, No. 003943/2007, slip op. (N.Y. Super. Ct. June 30, 2009) (awarded $850,000 fee for additional disclosures contained in proxy statements); *Rinderknecht v. Kerr-McGee Corp.*, No. CJ-2006-5204, slip op. (Oklahoma Cnty. Okla. Nov. 28, 2006) (awarded $825,000 negotiated fee amount for additional disclosures in Form 8-K).

1011735_1

upon non-monetary benefits obtained for shareholders, such as the enhanced disclosures here, particularly in the context of a corporate transaction involving the sale or exchange of the shareholders' stock. *See, e.g.*, *TSC Indus.*, 426 U.S. 438 (recognizing the importance of providing shareholders with all material information in order to promote the free exercise of the voting rights of stockholders); *Mills*, 396 U.S. at 396 (noting importance of fair and informed shareholder voting); *Wis. Inv. Bd. v. Bartlett*, No. 17727, 2002 Del. Ch. LEXIS 42, at *17-*20 (Del. Ch. Apr. 9, 2002) (supplemental proxy disclosures provided a therapeutic benefit to shareholders by allowing for informed shareholder vote), *aff'd*, 808 A.2d 1205 (Del. 2002); *Eisenberg v. Chicago Milwaukee Corp.*, No. 9374, 1988 Del. Ch. LEXIS 141, at *8 (Del. Ch. Oct. 25, 1988) (recognizing substantial benefit where representative shareholder succeeds in correcting invalid disclosures in connection with a transaction between the corporation and its stockholders). Such results are rewarded by court-approved attorneys' fees and expenses. *See, e.g.*, *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) ("the benefit need not be measurable in economic terms").

In Delaware, it is well-settled that curative disclosures confer a benefit on the class such that plaintiffs' counsel can successfully make a claim for fees and expenses. *See, e.g.*, *In re FLS Holdings, Inc. S'holder Litig.*, No. 12623, 1993 Del. Ch. LEXIS 57, at *16 (Del. Ch. Apr. 21, 1993) ("Improved disclosures may certainly prove beneficial to class members and may constitute consideration of a type which will support a settlement of claims."). As the court in *Talley* noted:

> Considering all the circumstances presented, I have no difficulty concluding that the disclosures made here constitute adequate consideration for the settlement of the claims asserted and adequately supported the fee requested.

- 18 -

*Talley Indus.*, 1998 Del. Ch. LEXIS 53, at *46; *see also In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 954 (Del. Ch. 2001).  Here, as a result of the prosecution and settlement of the Actions, Plaintiffs' Counsel obtained significant disclosures that enabled shareholders to make a clear, informed decision on the Acquisition.  Thus, Plaintiffs' Counsel's services in providing the Settlement Class with information about key facts were of material value to the shareholders.  There is no question that the Supplemental Disclosures achieved as a result of the prosecution and settlement of the Actions provided substantial benefits to Equal shareholders and fully support the negotiated amount of attorneys' fees and expenses.

Moreover, courts also have repeatedly held that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies.  Vigorous private enforcement of the federal securities laws and state corporation laws can occur only if private plaintiffs can obtain parity in representation with that available to large corporate interests.  If this important public policy is to be carried out, courts need to award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of merger and acquisition litigation.  "The Supreme Court has emphasized that while private actions provide "'a most effective weapon in the enforcement'" of the securities laws and are "'a necessary supplement to [SEC] action,'" it is imperative that the filing of contingent class action and derivative lawsuits not be chilled by the failure to award attorneys' fees or by the imposition of fee awards that fail to adequately compensate counsel for the risks of pursuing such litigation, and the benefits that would not otherwise be achieved."  *Cohn v. Nelson*, 375 F. Supp. 2d 844, 865 (E.D. Mo. 2005)

(citations omitted).   Accordingly, for the reasons set forth above, Plaintiffs' Counsel respectfully submit that the negotiated attorneys' fees and expenses should be approved.

### C.   Consideration of the Relevant "*Johnson* Factors" Further Supports the Negotiated Fees and Expenses

The Tenth Circuit has recognized that in determining an appropriate attorneys' fee, the court should be informed by an analysis of the factors articulated by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988); *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993).   As shown below, application of the relevant *Johnson* factors as a cross-check amply supports the reasonableness of the negotiated amount of attorneys' fees and expenses.[9]   The relevance of reach of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Tenth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.   *Brown*, 838 F.2d at 456.

---

[9]   The *Johnson* factors are:

>    (i) the time and labor required, (ii)  the novelty and difficulty of the questions presented by the case, (iii) the skill requisite to perform the legal service properly, (iv) the preclusion of other employment by the attorneys due to acceptance of the case, (v) the customary fee, (vi) whether the fee is fixed or contingent, (vii) any time limitations imposed by the client or the circumstances, (viii) the amount involved and the results obtained, (ix) the experience, reputation, and ability of attorneys, (x) the "undesirability" of the case, (xi) the nature and length of the professional relationship with the client, and (xii) awards in similar cases.

488 F.2d at 717-19.

- 20 -

### 1.      Time and Labor Involved

As detailed herein in the Wissbroecker Declaration, Plaintiffs' Counsel expended significant time and effort over a necessarily short period of time pursuing this litigation on behalf of members of the Settlement Class.  During the course of the litigation, Plaintiffs' Counsel (i) conducted an extensive investigation of the allegations both before and after the filing of the Actions including a thorough review and analysis of relevant SEC filings, press releases, and analysts reports about the Acquisition, Equal and Petroflow; (ii) consulted with a financial expert; (iii) prepared and filed initial and amended complaints; (iv) prepared and served requests for production of documents; (v) moved for expedited discovery; (vi) reviewed hundreds of pages of documents regarding Equal and the Acquisition, (vii) took the deposition of Donald Klapko; (viii) reviewed and analyzed the Preliminary Proxy in consultation with a financial expert; (ix) demanded that Defendants fully disclose all material information; and (x) conducted extensive settlement negotiations with counsel for Defendants regarding the disclosure of this information.

The time devoted to the Actions by counsel was under time-sensitive circumstances and was necessary to thoroughly investigate the case, assess the strengths and weaknesses of the claims and defenses, and settle this litigation on highly favorable terms for members of the Settlement Class.  Because of Plaintiffs' Counsel's extensive experience in shareholder merger and acquisition cases they have a unique insight into the legal and factual issues presented, and were able to effectively and efficiently prosecute this litigation and reach a highly favorable result for members of the Settlement Class.

### 2. The Novelty and Difficulty of the Questions Raised by the Actions

This litigation raised significant legal and factual issues.  Shareholder actions in the context of mergers and acquisitions (M&A litigation) are a niche practice in the arena of corporate law.  An even smaller subset of M&A litigation are those actions which challenge so-called "friendly mergers" into third parties, as opposed to actions that challenge management-led buyouts or controlling shareholders taking corporations private.  *See* Robert B. Thompson & Randall S. Thomas, *The New Look of Shareholder Litigation: Acquisition-Oriented Class Actions*, 57 Vand. L. Rev. 133, 173-78 (2004).  These actions are difficult to litigate because among other things, a board of directors approving such a deal is shielded by the business judgment rule unless it is shown that the board violated one of  its duties of loyalty, care, or candor.  *See McMullin v. Beran*, 765 A.2d 910, 917-18 (Del. 2000).  Overcoming the business judgment rule in this context can be a  daunting task for plaintiffs.  *See Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1246 (Del. 1999).

### 3. The Skill Required to Perform the Legal Services Properly and the Experience and Reputations of Plaintiffs' Counsel

It took a great deal of skill and experience to achieve what Plaintiffs' Counsel achieved for the Company's shareholders.  The attorneys who prosecuted the litigation on behalf of plaintiffs are nationally recognized practitioners in the field of shareholder class actions.  Indeed, Plaintiffs' Counsel not only have extensive experience in the area of securities class action litigation but are leaders in the M&A litigation field, having prosecuted numerous cases on behalf of shareholders in courts nationwide, and have continually obtained outstanding results for shareholders that they represent.   This

- 22 -

experience and talent allowed counsel to take financial risks and tackle difficult factual and legal issues and obtain the substantial benefits for members of the Settlement Class. In addition, Defendants were represented by experienced, sophisticated and well-respected attorneys. The ability of Plaintiffs' Counsel to obtain such a favorable result for Equal shareholders in the face of such formidable opposition confirms the quality of Plaintiffs' representation. As a result, Plaintiffs' Counsel's experience, skill, and acumen support the negotiated fee.

### 4. The Preclusion of Other Employment by Attorneys Due to Acceptance of the Case

The time spent by Plaintiffs' Counsel on the Actions was at the expense of time that counsel could have devoted to other matters. Accordingly, to the extent applicable, this factor supports the negotiated fee.

### 5. Time Limitations Imposed by Client or Circumstances

While this litigation did not involve client-imposed time limitations, the pace and circumstances of the Acquisition required immediate and aggressive litigative efforts from Plaintiffs' Counsel. This factor supports the requested fee.

### 6. Whether the Fee Is Fixed or Contingent

Plaintiffs' Counsel undertook this litigation on a contingent fee basis, assuming a significant risk that the litigation would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, who are paid an hourly rate and paid their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expense since the cases began. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in

- 23 -

awarding counsel's attorneys' fees in *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 U.S. Dist. LEXIS 6621, at *16 (E.D. La. May 18, 1994), the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation.  Counsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.  Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a successful result would be realized only after considerable and difficult effort.  Plaintiffs' Counsel committed substantial resources of both time and money to the vigorous and successful prosecution of the litigation for the benefit of the Company's shareholders.  In view of the skill of Defendants' counsel and the legal and factual difficulties of this litigation, the risk of never being compensated was real.  Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  The contingent nature of Plaintiffs' Counsel's representation strongly favors approval of the negotiated fee.

### 7.    The Amount Involved and the Results Obtained

Courts consistently recognize that the result achieved is a major factor to be considered in awarding a fee. *Hensley*, 461 U.S. at 436 ("most critical factor is the degree of success obtained").  As discussed herein, and the Wissbroecker Declaration, the settlement

- 24 -

provided substantial benefits to Equal shareholders in the form of the Supplemental Disclosures, including the updated fairness opinion, enabling shareholders to make a fully informed decision on the Acquisition.   The substantial benefits achieved for Equal shareholders fully support the negotiated fee.

### 8.    The Customary Fee and Awards in Similar Cases

As demonstrated in footnote 8 on page 17 hereof, the negotiated fee is consistent with other negotiated fees approved by courts throughout the country in similar cases where additional disclosures were obtained.   Because the attorneys' fees and expenses were negotiated at arm's length by sophisticated counsel with extensive experience in complex shareholder litigation, the negotiated amount mirrors the private marketplace, a result encouraged by the courts.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (market factors best known by the negotiating parties themselves, should determine the quantum of attorneys' fees).

## VI.    CONCLUSION

For all the reasons set forth herein, Plaintiffs' respectfully request that the Court finally approve the settlement and enter the Federal Court Order and Final Judgment.

DATED:  March 17, 2015                  Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
ELLEN GUSIKOFF STEWART
DAVID T. WISSBROECKER


                                 s/ Ellen Gusikoff Stewart
                                ELLEN GUSIKOFF STEWART

- 25 -

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
randyb@rgrdlaw.com
elleng@rgrdlaw.com
dwissbroecker@rgrdlaw.com

Interim Lead Counsel for Plaintiffs

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY
(OBA No. 14542)
4800 North Lincoln Boulevard
Oklahoma City, OK 73105
Telephone: 405/528-6569
405/528-6462 (fax)
dderryberry@derryberrylaw.com

Liaison Counsel for Plaintiffs

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 17, 2015.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  elleng@rgrdlaw.com

# Mailing Information for a Case 5:14-cv-00087-C Cooke et al v. Equal Energy Ltd et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jessica M Andrade**
  andrade.jessica@dorsey.com,summers.shawn@dorsey.com,griffith.michelle@dorsey.com

- **Jodi C Cole**
  jodi.cole@mcafeetaft.com,marianne.jackson@mcafeetaft.com,annette.strother@mcafeetaft.com

- **Darren B Derryberry**
  dderryberry@derryberrylaw.com,kreynolds@derryberrylaw.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com,jstark@rgrdlaw.com

- **James E Howard**
  jimhoward@dwt.com,michellehall-
  griffith@dwt.com,samanthafunk@dwt.com,SEADocket@dwt.com

- **Robert J Kopecky**
  rkopecky@kirkland.com

- **Michael D McClintock**
  michael.mcclintock@mcafeetaft.com,keeli.gardner@mcafeetaft.com

- **Jack C Moore**
  jack.moore@andrewshartman.com,adminmail@andrewshartman.com

- **Danielle S Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael E Smith**
  mesmith@hallestill.com,crisi@hallestill.com,athacker@hallestill.com

- **David T Wissbroecker**
  dwissbroecker@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)